1

2          IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE DISTRICT OF PUERTO RICO
3

4    IN RE:                            :      CASE NO. 11-00336 (ESL)
                                        :
5    FUGITIVE RECOVERY                  :
     INVESTIGATIONS, INC.               :      CHAPTER 11
                                        :
6                                       :
            Debtor                      :
7    _____    :

8

9                      OPINION AND ORDER

10          There are two issues pending in this case. The first issue before the court is the United States

11   Internal Revenue Service's (hereinafter referred to as the "IRS") request for retroactive annulment

12   of the automatic stay regarding a setoff of $131,070.12 in funds which were owed to Debtor by the

13   United States Department of Defense (hereinafter referred to as the "DOD") and were offset post-

14   petition against Debtor's outstanding federal tax liabilities pursuant to the Federal Payment Levy

15   Program, 26 U.S.C. §6331(h) (Docket Nos. 25, 49). The second issue before the court is the IRS'

16   motion to dismiss the instant case for failure to file post-petition tax returns and pay post-petition

17   taxes  pursuant to 11 U.S.C. §1112(b)(4)(I) (Docket Nos. 39, 49).  Debtor filed its opposition to the

18   IRS' motion for retroactive annulment of the automatic stay and to the motion to dismiss pursuant

19   to 11 U.S.C. §1112(b)(4)(I) (Docket No. 45).  A hearing was held on both matters on April 8, 2011.

20   For the reasons stated herein, this court grants the IRS' motion to dismiss the instant case.

21   Consequently, the IRS' request for retroactive annulment of the automatic stay is moot.

22                      Facts and Procedural Background

23          Fugitive Recovery Investigations, Inc. filed a bankruptcy petition under Chapter 11 of the

24   Bankruptcy Code on January 20, 2011. The Debtor included the IRS in its "List of Creditors Holding

25   20 Largest Unsecured Claims" in the amounts of $499,807.32 and $29,913.79. (Docket No. 1).

26   Debtor also listed the Puerto Rico Department of the Treasury ("PR Treasury") in its "List if Creditors

27   Holding 20 Largest Unsecured Claims" in the amount of $585,033.86 for payroll taxes (Docket No.

28   1).  Debtor also listed in its Schedule E, Creditors Holding Unsecured Priority Claims, the IRS' claim

     for withholding of payroll taxes (including FUTA) in the amount of $493,237.15.  Debtor listed in

1   its Schedule E, Creditors Holding Unsecured Priority Claims, the PR Treasury's claim for payroll

2   taxes in the amount of $585,481.98 (Docket No. 18). On February 9, 2011, the IRS filed proof of

3   claim #2-1 in the amount of $990,601.82, of which it claims $437,552.87 to be secured, $126,705.84

4   to be unsecured, and the remainder $426,343.11 as an unsecured priority tax claim under 11 U.S.C.

5   §507(a)(8).   On June 23, 2011, the PR Treasury filed proof of claim #42-1 in the amount of

6   $802,133.85, of which it claims $612,251.32 as an unsecured priority tax claim under 11 U.S.C.

7   §507(a)(8), and the remainder $189,882.53 as unsecured.  Subsequently, on April 4, 2011, the IRS

8   filed an amended proof of claim #4-1 in the amount of $973,183.42, of which it claims $437,552.87

9   to be secured, $135,263.90 to be unsecured, and the remainder $400,366.65 as an unsecured priority

10   tax claim under 11 U.S.C. §507(a)(8).

11          On March 7, 2011, the IRS filed a motion for relief from the automatic stay, *nunc pro tunc*,

12   requesting retroactive relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) as to

13   $131,070.12 in funds which were owed to the Debtor under contracts with the DOD, but which were

14   setoff pursuant to the Federal Payment Levy Program, 26 U.S.C. §6331(h) and applied against

15   Debtor's outstanding federal tax liabilities (Docket No. 25). In said motion the IRS provides the

16   following background information: (i) during the period of December 1, 2010 through December 31,

17   2010, Debtor performed certain services for the DOD under various DOD contracts; (ii) Debtor on

18   or around January 3, 2011 submitted to the DOD two (2) invoices numbered 10673 and 10674 in the

19   total amount of $133,070.12 for the services rendered during the month of December (Docket No.

20   25, Exhibit I- Invoices); (iii) on or around February 2, 2011, the DOD processed the invoices for

21   payment but since Debtor had outstanding federal tax liabilities, the DOD through the Federal

22   Payment Levy Program, transferred the payment corresponding to Debtor's invoices to the IRS; and

23   (iv) on or around February 3, 2011, after someone from Debtor's accounting office contacted the IRS,

24   the same took steps to ensure that the Debtor's federal tax liabilities would not trigger any further

25   setoffs through the Federal Payment Levy Program (Docket No. 25).  The IRS concedes that the levy

26   of funds owed under the referenced invoices violated the automatic stay, but alleges federal law

27   "permits bankruptcy courts to lift the automatic stay retroactively and thereby validate actions that

28   would otherwise be void." In re Soares, 107 F. 3d 969, 976 (1st Cir. 1997).  The IRS argues that this

1 court should afford retroactive relief of the automatic stay based on the following: (i) Debtor's bad

2 faith which consists of its failure to file post-petition tax returns and pay post-petition taxes pursuant

3 to 11 U.S.C. §1112(b)(4)(I); and (ii) "...under federal law, the United States was entitled to setoff the

4 funds that would otherwise have been paid to the Debtor, and given the Debtor's history of unpaid

5 federal taxes, and its continuing failure to comply with federal tax laws, the United States' should be

6 granted retroactive relief from the automatic stay." (Docket No. 25). The IRS also argues that the

7 funds in controversy were subject to a valid right of setoff based on the following reasons: (1) the pre-

8 petition claim of the United States and the contract payment for pre-petition services are mutual

9 obligations; (2) payments on government contracts may be setoff against the payee's federal tax

10 obligations pursuant to 26 U.S.C. §6331(h); and (3) the three (3) requirements for setoff under 11

11 U.S.C. §553 are satisfied, namely; (i) the debt owed by the United States to the Debtor for the services

12 performed in December 2010 and invoiced on January 3, 2011, under the government contracts was

13 incurred upon the completion of the services which occurred before the filing of Debtor's bankruptcy

14 petition; (ii) the Debtor has federal tax liabilities for multiple tax periods which are pre-petition

15 (Docket No. 25, Exhibit 2, IRS' Proof of Claim); and (iii) the mutuality test is satisfied because the

16 United States is a single government creditor for purposes of Section 553 and may exercise setoff

17 lines across agency lines, thus the DOD and the IRS are both parts of the United States government

18 and are mutual (Docket No. 25).

19     Subsequently, on March 22, 2011, the IRS filed a motion to dismiss pursuant to 11 U.S.C.

20 §1112(b)(4)(I) for Debtor's failure to file both pre-petition and post-petition tax returns and to make

21 post-petition federal employment tax returns which constitutes bad faith and warrants dismissal

22 (Docket No. 39). The IRS also argues that even though Debtor's failure to file pre-petition tax returns

23 is not included amongst the examples of cause established by 11 U.S.C. §1112(b)(4), the list is not

24 exhaustive. The IRS claims that Debtor has not filed its unemployment tax returns (Form 940) for the

25 years 2009 and 2010, nor its quarterly employment tax returns (Form 941) for the period ending on

26 December 31, 2010, nor made any of its payments on its employment tax liabilities for the first

27 quarter of 2011 (Docket No. 39, Declaration of Bankruptcy Specialist Daisy Montañez). On March

28 28, 2011, the Debtor filed its Opposition to the United States' Motion for Relief from the Automatic

1  Stay, *Nunc Pro Tunc*, and Opposition to the United States' Motion to Dismiss (Docket No. 45).

2  Debtor's opposition to both motions are based on rebutting the IRS' allegation of its bad faith by

3  arguing: (i) Debtor has been struggling with cash flow problems since the IRS first offset on

4  November 2010, which resulted in a turnover of employees that hindered Debtor's timely compliance

5  of its duties, which was aggravated by the IRS' illegal levy of $131,070.12 from Debtor; (ii) Debtor's

6  non-compliance with its filing duties with the IRS were directly caused by the IRS' actions pre and

7  post-petition; (iii) Debtor has recruited a new comptroller who has quickly resolved the pending

8  issues with the IRS and has filed the pending unemployment tax returns for 2009 and 2010, and the

9  quarterly employment tax return for the period ending December 31, 2010 (Docket No. 45, Exhibits

10 A & B); and (iv) Debtor was unable to make the payment of its employment tax for the first quarter

11 of 2011 because of the illegal levy of funds by the IRS on February 3, 2011 to offset federal tax

12 liabilities owed by Debtor. The Debtor argues that the IRS is not entitled to the retroactive relief from

13 the automatic stay because it has failed to present sufficient evidence of "extreme circumstances" that

14 are warranted for this discretionary relief to be afforded to the movant. Debtor argues that the

15 Debtor's alleged bad faith is based solely on its failure to file three (3) tax returns (which have been

16 filed) and the failure to pay post-petition taxes which could not be paid due to the IRS' illegal levy

17 of funds. Moreover, Debtor alleges that the post-petition offset performed by the IRS was illegal

18 because it was made against a pre-petition liability.

19       On April 4, 2011, the United States filed its reply to Debtor's Response to Motion for Relief

20 From Stay, *Nunc Pro Tunc,* and Motion to Dismiss by which it presented the following arguments:

21 (i) even though the payment of the United States debt was made post-petition, the same was due and

22 owing prior to Debtor's bankruptcy petition, meaning that the debt arose prior to the commencement

23 of the case; (ii) the fact that the United States has not paid over the funds while it obtains relief from

24 the automatic stay should not serve as grounds for denying the United States' motion, nor is it a sign

25 of bad faith; (iii) Debtor fails to address the fact that its 2009 unemployment tax return was due

26 approximately a year before the debtor filed for bankruptcy and was filed after the United States filed

27 its motion to dismiss; (iv) Debtor's delay in filing its 2009 unemployment tax return is evidence of

28 Debtor's bad faith and grounds for the court to grant the IRS retroactive relief from the automatic

1  stay; (v) the February setoff did not occur until after the tax returns at issue were due, so the debtor

2  cannot shift the blame to the IRS for its delay in filing the tax returns; (vi) Mr. Setien's (president of

3  Debtor) declaration lacks credibility since he alleged that Debtor was able to hire a new comptroller,

4  Mr. Luis Crespo, as recently as March 7, 2011 but the employment tax return for the period ended

5  December 31, 2010, attached to Debtor's response was signed on February 28, 2011; (vii) Debtor's

6  history of tax non-compliance since the year 2007 to the present evinces its bad faith; (viii) the only

7  remaining issue regarding the IRS' motion to dismiss is the Debtor's failure to pay post-petition taxes;

8  (ix) regarding the February setoff, the United States Supreme Court in <u>Citizens Bank of Maryland v.</u>

9  <u>Strumpf</u>, 516 U.S. 16, 21 (1995) recognized that creditors should be allowed to hold on to funds

10 subject to setoff while it requests relief from the automatic stay; (x) it would be absurd to require the

11 United States to pay the Debtor due to the substantial amounts owed by the same to the IRS; and (xi)

12 if the Debtor pays its employees, it is required to also pay employment taxes (Docket No. 46).

13 Subsequently, on April 7, 2011, the Debtor filed a Supplement to Opposition to United States' Motion

14 for Relief from Automatic Stay, *Nunc Pro Tunc*, and Opposition to United States' Motion to Dismiss

15 informing the court of a letter dated March 25, 2011, sent to Debtor by the U.S. Department of Labor

16 threatening to perform another illegal offset (Docket No. 47, Exhibit A). On April 8, 2011, a hearing

17 was held in which the court took under advisement the IRS' motion for annulment of stay with

18 retroactive effect and the motion to dismiss (Docket No. 49). On April 11, 2011, Debtor filed an

19 objection to the IRS' amended proof of claim contesting the secured nature of the claim and the

20 amount of said claim ($437,552.87) (Docket No, 50). The Debtor alleges that it owes the IRS the

21 amount of $206,948.23 as a priority claim inclusive of interest and the penalties which amount to

22 $82,955.63 for a total amount of $289,903.86 (Docket No. 50).  On May 11, 2011, the IRS filed its

23 response to Debtor's objection of the IRS' proof of claim (Docket No. 55).  A pretrial conference has

24 been scheduled for August 19, 2011, regarding Debtor's objection to the IRS' proof of claim (Docket

25 No. 56).

26      The contested matters came before the court on April 8, 2011 for an actual hearing. The court

27 took under advisement two issues; namely (1) the IRS' request for retroactive annulment of the

28 automatic stay pursuant to 11 U.S.C. §362(d)  regarding the setoff of $131,070.12 in funds which

1   were owed to Debtor by the DOD and were offset post-petition against Debtor's outstanding federal

2   tax liabilities pursuant to the Federal Payment Levy Program, 26 U.S.C. §6331(h) and (2) the IRS'

3   motion to dismiss pursuant to 11 U.S.C. §1112(b)(4)(I) which is based on Debtor's failure to pay

4   post-petition taxes and whether Debtor's tax non-compliance constitutes bad faith. The court will only

5   address the second issue as the same is dispositive of the case.

6                                    Applicable Law & Analysis

7   *Cause for Conversion or Dismissal pursuant 11 U.S.C. §1112(b)*

8          Section 1112(b) of the Bankruptcy Code mandates the bankruptcy court after notice and a

9   hearing to convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the

10  estate, if the movant establishes cause and the case is devoid of unusual circumstances pursuant to

11  11 U.S.C. §1112(b)(1) and (b)(2). 11 U.S.C. §1112(b). Thus, limiting the bankruptcy court's

12  discretion to dismiss or convert a chapter 11 case for "cause." See Gilroy v. Ameriquest Mortg. Co.

13  (In re Gilroy), 2008 Bankr. Lexis 3968 (B.A.P. 1st Cir. 2008); AmeriCERT, Inc. v. Straight Through

14  Processing, Inc. (In re AmeriCERT, Inc.), 360 B.R. 398, 401(Bankr. D. N.H. 2007)("Prior to its

15  amendment, the statute provided that a court 'may' dismiss the case upon finding cause, but amended

16  section 1112(b) provides that a court 'shall' dismiss if cause is found, absent unusual

17  circumstances."). The initial burden is on the movant to argue and present evidence by a

18  preponderance of the evidence standard to prove its position that there is cause for either conversion

19  or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate. See

20  Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4] (16th ed. 2011).  "Thus,

21  until the movant carries this burden, the statutory direction that the court 'shall convert the case to a

22  case under chapter 7 or dismiss the case' is not operative." Id. Once the movant establishes "cause",

23  the burden shifts to the debtor to demonstrate by evidence the "unusual circumstances" that establish

24  that dismissal or conversion to Chapter 7 is not in the best interests of the creditors and the estate. See

25  Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.05[1] (16th ed. 2011). The

26  bankruptcy court retains discretion in determining whether unusual circumstances exist and whether

27  conversion or dismissal is in the best interest of creditors and the estate. See Id; Gilroy v. Ameriquest

28  Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968 (B.A.P. 1st Cir. 2008). A determination of unusual

1  circumstances is fact intensive and contemplates facts that are not common to chapter 11 cases. See

2  Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.05[1] (16th ed. 2011). If the

3  Chapter 11 case is devoid of "unusual circumstances" then, the bankruptcy court must apply the

4  Section 1112(b)(2)[1] analysis to determine whether the Chapter 11 case is dismissed or converted. The

5  objecting party must establish all of the factual elements stated in subparagraphs (A) and (B) of

6  section 1112(b)(2). See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.05[1]

7  (16th ed. 2011). Thus, the bankruptcy court must not convert or dismiss a case if: "(1) there is a

8  reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the 'cause' for

9  dismissal or conversion is something other than a continuing loss or diminution of the estate coupled

10  with a lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or

11  excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time."

12  In re Orbit Petroleum, Inc. 395 B.R. 145, 148 (Bankr. D. N.M. 2008) aff'd, 421 B.R. 602 (B.A.P. 10th

13  Cir. 2009).

14       Section 1112(b)(4) of the Bankruptcy Code fails to define what the term "cause" means but

15  provides a list of circumstances which constitute "cause" for conversion or dismissal. This list of

16  causes is nonexhaustive, thus a case may be converted or dismissed for other causes. See

17  AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.), 360 B.R. 398, 401

18

---

19

20       [1]Section 1112(b)(2) provides:
         "[t]he court may not convert a case under this chapter to a case under chapter 7 or
21       dismiss a case under this chapter if the court finds and specifically identifies unusual
         circumstances establishing that converting or dismissing the case is not in the best
22       interests of creditors and the estate, and the debtor or any other party in interest
         establishes that–
23                (A) there is a reasonable likelihood that a plan will be confirmed within the
                  timeframes established in sections 1121(e) and 1129(e) of this title, or if
24                such sections do not apply, within a reasonable period of time; and
                  (B) the grounds for converting or dismissing the case include an act or
25                omission of the debtor other than under paragraph (4)(A)--
                          (i) for which there exists a reasonable justification for the act or
26                        omission; and
                          (ii) that will be cured within a reasonable period of time fixed by the
27                        court." 11 U.S.C. §1112(b)(2).
28

1   (Bankr. D. N.H. 2007).

2        Section 1112(b)(4)(I) specifically establishes that cause to dismiss or convert  a chapter 11

3   case includes, "failure timely to pay taxes owed after the date of the order for relief or to file tax

4   returns due after the date of the order for relief." 11 U.S.C. §1112(b)(4)(I).  In the instant case, it is

5   an uncontested fact that the Debtor tardily filed the Employer's Quarterly Federal Tax Return for the

6   fourth quarter of 2010 (Form 941-PR) and the Employer's Annual Federal Unemployment (FUTA)

7   Tax Return for the years 2009 and 2010 (Form 940) (all of the aforementioned tax returns were

8   received by the IRS on March 25, 2011 as indicated by the IRS stamp) and has failed to pay to the IRS

9   the FICA and FUTA taxes  owed in accordance with these tax returns. The due date for filing Form

10  940 is on January 31st and the due date for filing Form 941-PR is the last day of the month that

11  follows the end of the quarter, thus for the last quarter of 2010, Form 941-PR was due on January 31,

12  2011. However, the employment taxes (Form 941) must be deposited monthly, if the total taxes on

13  Form 941 for the 4 quarters in the taxpayer's lookback period were $50,000.00 or less and semi-

14  weekly if the total taxes were over $50,000. These deposits must be made by the 15th day of the

15  following month if you are a monthly depositor. See IRS Publication 15: Employer's Tax Guide, pgs.

16  20-21 (2011); Publicación 179: Guía Contributiva Federal para Patronos Puertorriqueños; pgs. 12-14.

17       The court is troubled by the fact that the Debtor, as an employer, has failed to comply with

18  its statutory duty to withhold social security and Medicare taxes (6.2% for social security, 1.45% for

19  Medicare for the year 2010 and 4.2% for social security and 1.45% for Medicare for the year 2011)

20  from its employees' wages and remit the same to the IRS (the employer tax rate for social security

21  remains unchanged at 6.2%), in addition to the employer's contribution of social security and

22  medicare taxes. See Id. Publication 15: Employer's Tax Guide, pg. 19; Publicación 179: Guía

23  Contributiva Federal para Patronos Puertorriqueños; pgs. 10-11.   Thus, Debtor's allegation that it

24  was unable to make the payment of its employment tax for the first quarter of 2011 due to the illegal

25  levy of funds by the IRS on February 3, 2011 is unfounded, given that Debtor had the obligation to

26  withhold and remit these funds to the IRS on November 15th, December 15th and January 15th if it was

27  a monthly depositor. The court notes that according to the declaration of bankruptcy specialist, Daisy

28  Montañez, the Debtor is a semi-weekly depositor which means that the Debtor must deposit these

1  taxes more frequently (Docket No. 39, Exhibit). Moreover, the Debtor did not even deposit with the

2  IRS the employees' portion regarding the social security and Medicare taxes. The court further notes

3  that Debtor in its Schedule E- Creditors Holding Unsecured Priority Claims included the Puerto Rico

4  Treasury Department having a claim in the amount of $585,481.98 for "withheld payroll taxes." The

5  Puerto Rico Treasury Department's proof of claim #42-1 in the amount of $802,133.85 of which

6  $198,355.24 is allocated to corporate income taxes and the rest of the tax liability is allocated to

7  employment taxes withheld by Debtor which constitute state income taxes that Debtor withheld from

8  its employees (tax years 2006-2009) and the 7% tax on withholdings for professional services (tax

9  years 2004-2008).  Therefore, it is clear that the Debtor has a history of withholding taxes from its

10  employees and not remitting a timely payment to the IRS.

11      In the instant case, this court finds that the Debtor not only failed to pay its post-petition

12  portion of the federal employment and unemployment taxes but also failed in its duty to remit the

13  employees' portion of the social security and medicare taxes to the IRS. This court concludes that

14  Debtor not only failed to pay post-petition employment (FICA) and unemployment taxes, but that its

15  conduct with respect to employment taxes is a serious offense, as the Debtor failed to meet its

16  obligations towards its employees in remitting their portion of the social security and medicare taxes

17  to the IRS. Moreover, Debtor's allegation that, "[a]s to the payment of its employment tax for the first

18  quarter of 2011, Debtor could not make said payments because of the illegal action of the IRS in

19  offsetting $131,070.12 on February 3, 2011" (Docket No. 45, pg. 3) fails to explain why it failed to

20  remit the employees' portion of the  employment taxes which Debtor has the obligation to withhold

21  and remit on a monthly basis or semi-weekly. Thus, this court concludes that  there is cause pursuant

22  to Section 1112(b)(4)(I) to dismiss the instant case.

23      The next phase of the analysis the court must engage in is whether the Debtor has

24  demonstrated that there are "unusual circumstances" that establish that the dismissal or conversion

25  is not in the best interests of the creditors and the estate. The court finds that the Debtor has not

26  alleged "unusual circumstances" in the instant case. The court also concludes that the Debtor has not

27  addressed the requirements under Section 1112(b)(2)(A) and (B) and thus has not established all of

28  the factual elements in conformity with this section. The Debtor has failed to allege, and much less

1   meet its burden, that there are unusual circumstances showing that conversion or dismissal is not in

2   the best interests of the estate and creditors. Lastly, this court concludes that the dismissal of the

3   instant case moots the IRS' request for retroactive annulment of the automatic stay.

4                                                  Conclusion

5          In view of the foregoing, the court finds that there is cause to dismiss this case pursuant to 11

6   U.S.C. §1112(b)(4)(I); and there being no unusual circumstances under 11 U.S.C. §1112(b)(2)(A) and

7   (B), the case is hereby dismissed.

8          SO ORDERED.

9          In San Juan, Puerto Rico, this 13th day of July 2011.

10

11                                                                    Enrique S. Lamoutte
                                                                   United States Bankruptcy Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28